UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
MADONNA SHIPPING SERVICES, INC.,                                 :
DANSO YBOAH, T'S NTHINGS, LTD., MERCY                            :
YEBOAH, MABEL MENSAH, OSOAN GH,                                  :
LTD., MERCY HOLDBROOK, HENRIETTA                                 :
NARTEY,  DAIANA AWUAH, GRACE AFFUL,                              :
TAIRAJ ENTERPRISE, TONY HOOPER,                                  :
DORKY  ENTERPRISE, ODURO MENSAH,                                 :
ALPHA BETA COMPANY, LTD., ALFRED                                 :
YAMOAH, and MARY MIRANDA SAM,                                    :
                                                                 :
                            Plaintiffs,                          :
                                                                 :          06 Civ. 1200 (GEL)
                            -v.-                                 :
                                                                 :          **OPINION and ORDER**
MEDITERRANEAN SHIPPING COMPANY S.A.                              :
GENEVA and OCEANE MARINE SHIPPING,                               :
INC.,                                                            :
                                                                 :
                            Defendants.                          :
                                                                 :
-----------------------------------------------------------------x

Francis J. Dooley, West Orange, NJ, for plaintiffs.

Edward P. Flood, Lyons & Flood, LLP, New York,
NY, for defendants.


GERARD E. LYNCH, District Judge:

        In the Port of Tema, Ghana, after being shipped from New York and while being

unloaded from a vessel owned by Mediterranean Shipping Company ("MSC"), a large cargo

container fell into the ocean, destroying or severely damaging its contents.  The individuals

whose property was damaged, as well as Madonna Shipping Services, the freight consolidator

hired to ship the freight, sued Oceane Marine Shipping Co., the Federal Marine Commission-

licensed non-vessel-operating common carrier ("NVOCC") hired to arrange for the transport of

the shipment, as well as MSC.  The individuals seek compensation for the damaged property in excess of $500,000 and Madonna seeks compensation for the costs of shipment.

Two bills of lading were issued regarding the shipment, one by Oceane and one by MSC. Oceane's bill of lading, dated December 22, 2004, described the shipment as follows: "1998 TOYOTA SIENNA . . . 124 PIECES PERSONAL EFFETS.  NO SED REQUIRED. . ." (Defendant Exhibit ("DX") A.)  MSC's bill of lading, dated December 23, 2004, also described the shipment with the same language.  (DX D.)[1]

Defendants move for partial summary judgment, arguing that the Carriage of Goods by Sea Act ("COGSA") [46 U.S.C. §§ 1300-1315] applies, limiting plaintiffs' potential recovery from defendants to $500 per package, and that pursuant to COGSA the shipment contained at most 125 "packages."  There is no dispute that the bill of lading referred to carriage of goods by sea from a US port.  Plaintiffs oppose summary judgment on three grounds, claiming that the COGSA limitations do not apply to limit plaintiffs' claims.  First, plaintiffs claim that they were not provided a reasonable opportunity to declare the value of their cargo because certain terms of the bill of lading were illegible.  Second, plaintiffs claim that defendants fundamentally breached their contract of carriage by failing to provide the appropriate Shipper's Export Declaration in connection with the shipment.  Third, plaintiffs claim that the stevedore was grossly negligent in unloading the goods in Tema.  As plaintiffs' first argument presents issues of fact for trial, the defendants' motion fails.

---

[1] A reasonable factfinder could conclude that MSC prepared their bill of lading based on Oceane's representations after it had verified the bill of lading with Madonna, and did no investigation or due diligence itself.  (D. Mot. 2; Affirmation of Kris Luykx, dated June 29, 2007, ("Luykx Affirmation") ¶ 14.)

**DISCUSSION**

I.  The Legal Standards

    A.  Summary Judgment

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party.  Id. at 254-55.  However, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to withstand a motion for summary judgment.  Id. at 252.

    B.  COGSA

COGSA applies to "[e]very bill of lading . . . for the carriage of goods by sea to or from ports of the United States, in foreign trade."  46 U.S.C. §1300.  The term "'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship."  46 U.S.C. § 1301.  See also Seguros Illimani S.A. v. M/V Popi P, 929 F.2d 89, 93 (2d Cir. 1991).  Pursuant to COGSA,

3

> [n]either the carrier nor the ship shall . . . be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C. § 1304(5).

In determining what constitutes a COGSA package, the Court is guided by certain principles. First, the task is "largely and in the first instance a matter of contract interpretation." Allied Chemical Intern. Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476, 485 (2d Cir. 1985); Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam, 759 F.2d 1006, 1012 (2d Cir. 1985) ("the touchstone of our analysis should be the contractual agreement between the parties, as set forth in the bill of lading"). Interpreting the bill of lading is thus a matter of law for the court. Second, though the definition of package is flexible, it must be "the result of some preparation [of the cargo item] for transportation . . . which facilitates handling, but which does not necessarily conceal or completely enclose the goods." Binladen, 759 F.2d at 1012. Third, the Second Circuit has "refused to hold a shipping container to be a COGSA package, absent a clear agreement between the parties to that effect, at least so long as its contents and the number of packages or units are disclosed." Id. (internal citations and quotation marks omitted). Thus, "when the bill of lading discloses not only the number of containers but the number of cartons within them, the cartons, not the containers, will be treated as COGSA packages." Id. at 1013.

The COGSA per-package limitations do not apply if the carrier does not give the shipper a fair opportunity to declare a higher value, including adequate notice of the liability limitation provisions, as well as a reasonable *ad valorem* charge for the additional protection. General Elec. Co. v. M.V. Nedlloyd, 817 F.2d 1022, 1028 (2d Cir. 1987); see also Nippon Fire & Marine

4

Ins. Co. v. M.V. Tourcoing, 167 F.3d 99, 101 (2d Cir. 1999).  A carrier can make a prima facie

showing that notice of the limitation and an opportunity to purchase excess coverage was given

to the shipper through the language of the bill of lading.  General Elec. Co., 817 F.2d at 1029.  If

such a showing is made, the burden of proof then shifts to the shipper to demonstrate that the fair

opportunity to declare additional value did not in fact exist.  Id.

     Even if the shipper has a fair opportunity to declare a higher value and chooses not to do

so, the COGSA limitations will not apply if the carrier engages in an "unreasonable or

unjustifiable deviation [of the terms of carriage that] so changes the essence of the agreement as

to effect its abrogation."  SNC S.L.B. v. M/V Newark Bay, 111 F.3d 243, 248 (2d Cir. 1997)

(internal citations and quotation marks omitted).  A deviation is unreasonable "when, in the

absence of significant countervailing factors, the deviation substantially increases the exposure

of cargo to foreseeable dangers that would have been avoided had no deviation occured."  Id.

(internal citations and quotation marks omitted).  In addition, when a carrier makes a

misrepresentation in a bill of lading with respect to its own conduct, such as whether it had in

fact loaded the cargo, or whether the cargo was improperly loaded above deck, the COGSA per-

package limitations may not apply.  See Berisford Metals Corp. v. S/S Salvador, 779 F.2d 841,

847 (2d Cir. 1985).  Or, "[i]f the carrier delivers the goods to one other than the authorized

holder of the bill of lading, the carrier is liable for misdelivery."  Allied Chemical, 775 F.2d at

481.

     Courts have either held or assumed that the COGSA limitations extend to the NVOCCs.

See, e.g., Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1256-57 (9th Cir.

2005); Schramm, Inc. v. Shipco Transport, Inc., 364 F.3d 560, 566 (4th Cir. 2004); All Pac.

Trading v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1430 (9th Cir. 1993).[2]  Though COGSA limits

liability for carriers, it does not do so for stevedores.  Robert C. Herd & Co. Inc., v. Krawill

Machinery Corp., 359 U.S. 297, 302-03 (1959).  Parties may contract to extend COGSA liability

limitations to stevedores "thereby making COGSA apply [not] of its own force as a statute, but

merely as a contractual term in the bill of lading."  Seguros Illimani, 929 F.2d at 93 (internal

citations and quotation marks omitted); Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d

934, 936 (2d Cir. 1972).  However, "bills of lading are contracts of adhesion and, as such, are

strictly construed against the carrier."  Allied Chemical, 775 F.2d at 482 (2d Cir. 1985), citing

The Caledonia, 157 U.S. 124, 137 (1895);  Mitsui & Co. Ltd. v. American Export Lines, Inc.,

636 F.2d 807, 822-23 (2d Cir. 1981); West India Industries v. Tradex, 664 F.2d 946, 951 n. 9

(5th Cir. 1981).

    C.  Shipper's Export Declaration

    The Shipper's Export Declaration is "used by the Bureau of Census to collect trade

statistics and by the Bureau of Industry and Security for export control purposes."  15 C.F.R. §

---

    [2] Some courts assume without explanation that an NVOCC is covered as a carrier under
COGSA.  Other courts base their reasoning on the text of the Shipping Act of 1984, an act
separate from COGSA.  See All Pac. Trading v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1430
(9th Cir. 1993) (noting that an NVOCC is defined by 46 U.S.C. § 1702(17) to be a shipper in
relationship with an ocean common carrier, and a carrier in its relationship to a shipper of
goods); see also Senator Linie GMBH & Co. KG v. Sunway Line, Inc., 291 F.3d 145, 149 (2d
Cir. 2002) ("Under COGSA, [a party] qualified as a shipper in its capacity as a NVOCC. 46
U.S.C. § 1702(17)(B) & (21)(E)."); National Customs Brokers & Forwarders Ass'n of America,
Inc. v. U.S., 883 F.2d 93, 101 (D.C. Cir. 1989) ("An NVOCC assumes common carrier
responsibilities for transportation even though it 'does not operate the vessels by which the
ocean transportation is provided.'") quoting 46 U.S.C. § 1702(17).  However, these cases may be
of questionable validity today, as 46 U.S.C. § 1702 was repealed in 2006.  See Pub.L. 109-304, §
19, Oct. 6, 2006, 120 Stat. 1710.  Notwithstanding the repeal, the federal common law also
informs the definition of "carrier" under COGSA.  In any event, these issues are not raised by
the parties, and the Court therefore need not address them.

758.1(a).  The SED is a "statement to the United States Government that the transaction occurred as described."  Id.  The SED is an export control document, and when it is presented to the U.S. Government, the signer represents that "[a]ll information shown on the SED . . . is true, accurate, and complete."  15 C.F.R. § 758.1(f)(3).  An agent that applies for a license on behalf of a principal party "must obtain a power of attorney . . . that sets forth the agent's authority to apply for the license on behalf of the principal."  15 C.F.R. § 758.1(h)(1)(ii).  SEDs are required for exports of commodities whose value exceeds $2,500, except as exempted by certain regulations.  15 C.F.R. § 758.1(b)(3).

In certain circumstances "the values submitted in the Shipper's Export Declaration are used by customs officials in determining which outbound cargo to inspect; higher-valued cargo suggests high-technology goods whose export may be restricted."  United States v. Chmielewski, 218 F.3d 840, 842-43 (8th Cir. 2000).  Further, the value stated on the SED may be used to help calculate the duties levied upon the cargo by exporting or importing countries.  Id. at 841 (describing scheme whereby defendant grossly understated on SEDs the value of slot machines being imported to South Africa as part of a scheme to avoid the import duty of between 54% to 69% of the value of the goods).

The regulations make clear that "no person may make any false or misleading representation, statement, or certification . . . in connection with the preparation, submission, issuance, use, or maintenance of any export control document."  15 C.F.R. § 764.2(g)(1)(ii).  An export control document is defined to include SEDs as well as "[d]ock [r]eceipt[s] or bill[s] of lading issued by any carrier in connection with any export subject to the EAR [Export Administration Regulations]."  15 C.F.R. § 772.1.  All "items in the United States" and "US

7

origin items wherever located" are "subject to the EAR."  15 C.F.R. § 734.3.

II.  <u>The Legal Standards Applied</u>

    A.  <u>Number of Packages</u>

Defendants argue that Oceane and MSC bills of lading identify at most 125 COGSA packages.  (D. Mot. 6.)  Both identify the "number of packages" as "1" and describe the commodities as "TOYOTA SIENNA . . . 124 PIECES PERSONAL PROPERTY."  (DX A, D.) Plaintiffs do not contest defendants' reading of the bills of lading, and suggest no other plausible way to read the bill of lading to provide for more than 125 packages.  The bills of lading may be ambiguous, but not in any way that benefits plaintiffs.  <u>Seguros Illimani</u>, 929 F.2d at 94 (2d Cir. 1991) ("'Package' is a term of art in the ocean shipping business, and parties to bills of lading should expect to be held to the number that appears under a column whose heading so unmistakably refers to the number of packages.")  Based on the clear language of the bills of lading, the number of packages could be either 1 or 125, but nothing else.  Therefore, construing the facts in the light most favorable to plaintiffs, there can be at most 125 COGSA packages.

    B.  <u>Notice and Opportunity to Declare Higher Value</u>

Defendants argue that plaintiffs could have obtained full coverage from Oceane by declaring a higher value for the goods.  Clause 23 of the Oceane bill of lading provides that: "When the U.S. Carriage of Goods by Sea Act applies, the Company'[s] liability will be limited to U.S. $500 per package.  If the goods are not transported in individual packages, the liability will be limited to U.[S]. $500 per customer freight unit unless a higher value is declared."  (DX A.)  Clause 1(b) of the MSC bill of lading states that:

        For goods shipped in or from the United States of America this B/L

> shall be subject to the U.S. Carriage of Goods by Sea Act, 1936 . . .
> which shall also apply by contract at all times before loading and
> after discharge as long as the goods remain in the custody and control
> of the carrier.

(DX D.)  Clause 22 of the MSC bill of lading states: "[i]n case of goods shipped to or from the

United States, the Carrier's liability shall be limited to $500 per package, or the customary

freight unit unless excess value is inserted on the face hereof and extra charge paid." (Id.)

Plaintiffs contend that they were not given a fair opportunity to declare a higher value,

because the relevant provisions in both bills of lading warning plaintiffs of the COGSA

limitations are "illegible" and "unreadable." (P. Opp. 3.)  Plaintiffs cite Nemeth v. General

Steamship Corp. Ltd., 694 F.2d 609 (9th Cir. 1982), for support.  Nemeth involved an individual

who contracted with a freight shipper, like Oceane, to ship his personal goods and work tools

from Argentina to the United States.  The goods were damaged en route, and when plaintiff

brought suit, the freight shipper attempted to impose the COGSA per-package limitation.  The

Ninth Circuit noted that the copy of the bill of lading was "microscopic and blurry," "illegible to

the unaided eye," unable to be "deciphered without resort to a magnifying glass or a preexisting

knowledge of section 4(5)," and therefore insufficient to meet the carrier's initial burden of

proving that the shipper was given a fair opportunity to declare a higher value for the cargo.

Nemeth, 694 F.2d at 611-12.

The parties dispute the legibility of the original bills of lading in this case.  Defendants

submit a copy of language from the Oceane bill of lading quite easy to read.  (DX A.)  However,

plaintiffs note that the document is a blowup, "enlarged [from one page to] 6 pages to make it

readable."  (P. Opp. 3.)  Further, in light of the copy that plaintiffs provide (PX 3), it is not clear

that defendants' blowup is even a copy of the original Oceane bill.[3]  Defendants produce a copy

of the MSC bill of lading whose terms and conditions language is comparable in size to the terms

and conditions language in the copy of the Oceane bill of lading that plaintiffs provide.  (DX D;

PX 3.)  Defendants note that plaintiffs have not produced either of the original bills of lading and

"do[] not now do so in support of [their] assertion of illegibility" claiming that "the fact that

counsel annexed an arguably substandard rendition of the terms of the bills of lading . . . does

not mean that the original bills of lading were similarly impaired."  (D. Reply 8.)

In a motion for summary judgment, the Court must draw all reasonable inferences and

resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most

favorable to the nonmoving party.  Anderson, 477 U.S. at 254-55.  Thus, the Court must reject

defendants' invitation to assume that the original Oceane bill of lading is more legible than the

copy produced by plaintiffs.[4]  Plaintiffs do not argue that the defendants' copy of the MSC bill

---

[3] It is clear that the copy of the Oceane bill of lading that defendants provide could not
have been made by simply enlarging the copy of the Oceane bill of lading that plaintiffs provide.
In the plaintiffs' copy, for example, the definitions paragraph, the first paragraph, consists of two
lines.  (PX 3.)  In defendants' copy, in contrast, based on differences in format and spacing, the
definitions paragraph consists of five lines.  (DX A.)  Furthermore, in plaintiffs' copy, clauses
three and four are in the same column on the page as clauses one and two.  (PX 3.)  In
defendants' copy, again based on formatting and spacing differences, clauses three and four
begin a new column on the first of six pages.  (DX A.)  Further, there are material substantive
differences on the face of the bill of lading.  Notably, whereas defendants' copy contains the
language "VALUE UNDER $2500" (DX A), plaintiffs' copy does not.  (PX 3).  For purposes of
defendants' summary judgment motion, the Court must assume that plaintiffs provide the only
accurate copy of the original Oceane bill of lading.

[4] Conceivably, the original Oceane bill could be easier to read than a copy.  However,
defendant, who as moving party has the burden of establishing the absence of a genuine factual
issue, have chosen to provide what is, at best, an enlarged copy, and at worst, not even a copy.
In neither case can it be used to determine legibility of the original Oceane bill.  Furthermore,
defendants have not argued that plaintiffs' copy in any way misrepresents the original (other than
being a copy, and thereby reduced in resolution).  Therefore, the Court can only rely on the copy

misrepresents the original; however, they do assert that the MSC bill, like the Oceane bill, is

illegible.  (P. Opp. 3.)  In the MSC bill of lading provided by defendants and the Oceane bill of

lading provided by plaintiffs, the font invoking the COGSA limitations is indeed extremely

small.  When one focuses with great concentration, one can barely make out the words, and it

would be difficult to read and understand the provisions on the bill of lading "without resort to a

magnifying glass" or a prior understanding of COGSA.  Viewing the facts most favorably to

plaintiffs, based on the copies of the bills of lading in the record, and based on the context in

which the COGSA provisions were placed, a reasonable factfinder could conclude that plaintiffs

were not on notice of the COGSA provisions.

       As in Nemeth, additional factors support this conclusion.  The Nemeth court noted that

plaintiff alleged that prior to shipment, he gave the carrier and agent a list detailing the contents

of the shipment and notifying them that the shipment's value was in excess of $20,000.  694 F.2d

at 610-11.  The court held that this could be "evidence of an attempt to declare a higher valuation

than the COGSA limit or as evidence that [plaintiff] would have opted for a higher liability had

he been given a fair opportunity to do so."  Id. at 612.

       Here, plaintiffs claim that Oceane "knew" that the "true value of the freight in the

container was $275,214.14."  (P. Opp. 2.)  In rebuttal, defendants claim that Madonna provided a

description of goods to be shipped, but chose not to declare a value for the goods.  (D. Rep. 4;

Affirmation of Kris Luykx, dated June 29, 2007 ("Luykx Affirmation"), ¶ 10.)  In support,

defendants submit an exhibit, the "Written Authorization/Power of Attorney."  (Luykx

Affirmation Exhibit ("LX") A.)  Notwithstanding Luykx's affidavit, the document does not

proffered by the plaintiffs in determining whether a factual dispute exists.

prove that the individuals failed to declare information that defendants actually asked them to

provide.  In fact, the document may suggest the opposite: evidence of an attempt to declare a

higher value than the COGSA limit, or evidence that plaintiff would have opted for a higher

value if given the opportunity to do so.

The document, apparently the power of attorney required by 15 CFR § 758.1(a)(2) for an

NVOCC to be authorized to serve as an agent of a shipper, appears to be a form document of

Oceane.  A reasonable factfinder could conclude that Oceane provided it to plaintiffs who

completed it and then faxed it back to Oceane.  The document is a written authorization by

Oceane's clients for Oceane to file an Automatic Export System record ("AES")[5] regarding the

shipment.  It reads, in the portion prepared by Oceane, "I understand that if anything is valued

over $2499.00, I must provide the owner's complete name, address, telephone and social security

number for AES."  (Id.)[6]  Someone underlined this sentence by hand, and put a star in the left

indent of the document (id.); a reasonable factfinder could infer that this was done by an agent

for the plaintiffs.  The document does not, on its face, require that the individual filling out the

form provide the value of any one item, nor does it request that the shipper declare the total

value of the cargo if it exceeds $2,499.  The form does require that the individual declare

"anything" valued over $2,499.  It also states that "All personal effects or household goods can

be listed under one total value."  (Id.)

_____

[5] An AES is functionally equivalent, at least in this context, to an SED.  See 15 C.F.R. § 758.1.

[6] The filing of an AES or SED is triggered when the value of the cargo exceeds $2,500, not when it exceeds $2,499.  15 C.F.R. § 758.1(b)(3).

Under these printed instructions is a space for the declaration of goods.  Though the form has space for an individual to identify the value of the cargo declared, it does not state that a person declaring cargo "must" declare that value.  On the first line, someone declared a "98 Toyota" and listed the name of the owner as well as the owner's social security number.[7] Whoever filled out the form did not provide a specific value for the Toyota, but a reasonable factfinder could conclude that plaintiffs put the star next to the description, corresponding to the star next to the underlined sentence, suggesting that plaintiffs were declaring that the cargo exceeded $2,499.  On the second line, the individual who filled out the form declared only "PLE" (presumably meaning "personal effects"), and did not provide any corresponding information; again, however, whoever filled out the form placed a star next to the underlined sentence, and a reasonable factfinder could conclude, again, that plaintiffs may have thought that they were indicating by the star that the value of the "PLE" exceeded $2,499.  Defendants claim that they had no information as to the value of the cargo.  (D. Rep. 3.)  However, one could conclude in light of the above facts that defendants in fact knew that at least two potential packages, the van and at least one possible package of personal effects, exceeded $500 in value, or at a minimum that plaintiffs would have declared a higher value had defendants made clear that limitation of liability could result from failure to do so.[8]

---

[7] Defendants note that plaintiffs did not provide "the complete information regarding the subject cargo's owner."  (D. Rep. 4).  However, though the form appears to require that an individual provide an address and telephone number if declaring cargo in excess of $2,499, it does not provide space to list that information.

[8] Plaintiffs also allege in their complaint that "[o]n information and belief defendant Oceane issued a NVOCC Bill of Lading to plaintiff MADONNA to which was attached the names of the CARGO PLAINTIFFS and the value of each CARGO PLAINTIFFS' cargo," suggesting that defendants may have actually known of the value of the cargo.  (Complaint ¶ 8.)

13

The Nemeth court was also influenced by the fact that the plaintiff did not have an opportunity to correct certain mistakes in the SED before it was issued.  In Nemeth, the plaintiff alleged that, notwithstanding plaintiff's declaration to the carrier that the shipment exceeded $20,000 in value, the carrier prepared a bill of lading with a declaration of $400 without plaintiff's knowledge or consent.  694 F.2d at 611.

Defendants here claim that they sent Madonna the Oceane "bill of lading . . . for proofing and approval . . . which included a description of the cargo stating 'NO SED REQUIRED, VALUE UNDER $2500.'"  (D. Reply 5, citing LX B, emphasis omitted.)  However, defendants are mistaken or misrepresenting.  The draft Ocean bill of lading presented to plaintiffs  states only "NO SED REQUIRED."  It does *not* state "VALUE UNDER $2500." (LX B.)  Therefore, based on defendants' own representations, it is not clear that plaintiffs had the opportunity to correct the statement "VALUE UNDER $2500" on the Oceane bill before it was issued.[9] Further, notwithstanding defendants' representations, it is not even clear that the statement "VALUE UNDER $2500" existed on any copy of any bill of lading that Oceane in fact issued to plaintiffs.[10]

_____

However, any such document would presumably be in the possession of the plaintiffs, and plaintiffs did not produce it.

[9] Arguably, a sophisticated exporter should know that "NO SED REQUIRED" indicates, at least in this context, that the total value of the cargo is under $2,500.  Whether to draw such an inference is a decision for the factfinder at trial.

[10] Notably, in contrast to the copy that defendants and their attorney represent is the copy of the Oceane bill of lading issued to defendants (Affirmation of Edward P. Flood, dated May 18, 2007 ¶ 6; DX A), the bill that plaintiffs produce lacks the phrase "VALUE UNDER $2500." (PX 3.)  Also, in contrast to the copy produced by defendants, plaintiffs' copy of the bill of lading has a stamp signed by "OSOAN (GH) LTD." and various other handwritten notes, as well as a stamp that says "original." (PX 3.)  These inconsistencies present significant issues of fact that cannot be determined on summary judgment.

14

Interpreting this evidence in the light most favorable to plaintiffs, a reasonable factfinder could conclude that plaintiffs attempted to declare a higher value for their cargo. Also, defendants may have been aware that the value of the property shipped exceeded $2,499, especially in light of the declarations on the power of attorney sheet, the cost of the shipping,[11] and the gross weight and size of the container. Further, it is not clear that defendants had an opportunity to correct the statement, "VALUE UNDER $2500," before the final Oceane bill of lading was issued.[12]

This is not to say that plaintiffs are likely to prevail. In Nemeth, plaintiff was a private individual with no apparent experience in the international shipment of goods. 694 F.2d at 610. Here, though the individual plaintiffs whose goods were damaged do not appear to be experts in international shipping, they hired Madonna, by plaintiffs' own description "an exporter of goods in international trade." (Complaint ¶ 3.) Presumably, a professional exporter would be familiar with the terms of COGSA, a well-established legal regime, and familiar with the terms generally present in bills of lading. Thus, this Court is skeptical that plaintiffs, as a matter of fact, did not have notice of the COGSA provisions, and were naively unable to provide Oceane or MSC with the correct information. However, construing the record most favorably to plaintiffs, this Court

_____

[11] According to the MSC bill of lading, plaintiffs were charged at least $3,035 to transport the cargo. (DX D.)

[12] A factfinder could conclude that the MSC bill of lading was drafted solely upon the information contained in Oceane's bill of lading and issued on the day the shipment left New York. (D. Mot. 2; Luykx Affirmation ¶ 14.) At least with respect to the MSC bill of lading, defendants do not even suggest that they gave plaintiffs an opportunity to correct the bill before it issued. Their argument that plaintiffs had an opportunity to correct the information declared in the bills of lading centers on the draft Oceane bill of lading presented to plaintiffs. (LX B.) Unlike (at least defendants' copy of) the final Oceane bill, the MSC bill did not contain the statement "VALUE UNDER $2500." (DX D.) Instead, it only said "No SED Required." (Id.)

cannot conclude that there is no genuine issue of fact as to whether plaintiffs were given notice of the COGSA limitations and had a reasonable opportunity to declare a value in excess of $500 per COGSA package.

      C. Failure to File a Shipper's Export Declaration

      Plaintiffs' other arguments are less meritorious.  Plaintiffs claim that defendants intentionally failed to complete, certify, and file a Shipper's Export Declaration, and stated on all bills of lading "NO SED REQUIRED," and that this was a "deliberate crime" and a fundamental breach of contract between plaintiffs and defendants.  (P. Opp. 3.)  Plaintiffs "request[] that defendants' motion be denied because of their dishonesty, duplicity and illegal actions."  Id. They do not claim that they relied on and were damaged by defendants' alleged dishonesty.

      Defendants submit uncontested evidence that plaintiffs had the opportunity to correct Oceane's bill of lading stating "NO SED REQUIRED" before it issued.  (LX B.)  Whether or not defendants violated the law by failing to issue an SED, the failure to comply with export declarations regarding the value of the shipment is not a deviation from the contract of carriage that "substantially increase[d] the exposure of cargo to foreseeable dangers that would have been avoided had no deviation occured."  Newark Bay, 111 F.3d at 248.

      Plaintiffs cite Berisford Metals Corp. v. S/S Salvador for the proposition that "[t]he issuance of a false or misleading Bill of Lading is a fundamental breach of contract and the carrier cannot claim the limitations and defenses of COGSA."  (P. Opp. 3.)  However, plaintiffs interpret Berisford far too broadly.  Berisford is a much different case, in which a purchaser of goods relied on misstatements of the carrier, concerning the carrier's own actions, to the

detriment of the purchaser.[13]  In <u>Berisford</u>, the purchaser had no other way to verify the

information provided to it by the carrier.  Here, though, if the carrier misrepresented the nature

of the goods, it did not do so to the detrimental reliance of plaintiffs.  Here, plaintiffs knew better

than the carrier the nature of the goods being shipped.  <u>See</u>, <u>e.g.</u>, <u>Atlantic Mut. Ins. Co. v. M/V</u>

<u>President Tyler</u>, 765 F.Supp. 815, 818 n.2 (S.D.N.Y. 1990) (noting that a false statement on a bill

of lading did not "go to the very essence of the contract" and "[n]o reliance was alleged, and . . .

the misrepresentation appears to be of no effect insofar as the applicability of COGSA to [the

carrier] is concerned").

     If there was any wrongdoing in the failure to declare the appropriate value, plaintiffs

would be *in pari delicto*, as they agreed to the bill of lading declaring that no SED was required

(Luykx Affirmation ¶ 12; LX B) with the full knowledge that the value of their cargo exceeded

$2,500.  Further, at least from the perspective of export control, it was plaintiffs and not

defendants that stood to benefit from an undervaluation of the cargo.  Interpreting the facts in a

light most favorable to the plaintiffs, this Court could conclude at most that plaintiffs and

---

[13] There, plaintiff contracted with a third party to purchase 50 metric tons of tin ingots, with payment to be made 45 days after ocean bill of lading date against presentation of a "full set of shipping documents," understood to be a clean on board bill of lading.  779 F.2d at 842-43. Pursuant to the contract, title of the goods was to pass to plaintiff when the goods were loaded on board the ship.  <u>Id</u>. at 842 n.2.  The third party delivered 100 bundles of tin ingots to defendant, the carrier, who acknowledged receipt and packaged them into four containers.  Defendant subsequently issued a clean on board bill of lading stating that the ship had received "100 bundles steel strapped on wooden skids containing 3000 refined tin ingots."  <u>Id</u>. at 843. However, upon loading the containers onto the ship, defendant did not verify the contents or make a tally of the ship.  In reliance on the clean bill of lading, plaintiff paid the third party the full value of the contract.  When the containers arrived at their destination after being shipped by defendants, 70 of the 100 bundles were missing.  <u>Id</u>.  Instead of weighing 111,656 lbs., the shipment weighed 32,771 lbs.  <u>Id</u>. at 848.  The Court held that "the carrier is the party that must be held responsible for loss resulting from the falsity of its warranty that the goods had been loaded when in fact it had not put them aboard the ship."  <u>Id</u>. at 849.

defendants *together* misrepresented the value of the cargo to the detriment of the exporting and importing authorities, the United States and Ghana.  Therefore, this Court cannot conclude that the alleged misrepresentation in the bill of lading or the failure to file an SED constituted a fundamental breach of the contract of carriage between these parties, or defeats the validity of the liability limitation, assuming that provision is otherwise found to be binding.[14]

D. <u>Gross Negligence in Discharging Goods</u>

Finally, plaintiffs claim that the "[d]efendants have refused to provide details of the accident," but that "it is obvious the stevedore's actions caused the loss" because "it takes a very high degree of negligence, gross negligence, to drop a container into the sea during loading or discharge."  (P. Opp. 4.)  Defendants contend that the "bills of lading contain valid Himalaya clauses, which expressly extend the protections of the bills of lading and COGSA to third parties such as" the stevedore.  (D. Rep. 9.)[15]

Even assuming defendants could in principle be liable for the stevedore's actions, plaintiffs provide no showing of negligence on the part of any party, and simply assert, without

---

[14] Though plaintiffs' brief is by no means clear, it may be read to suggest that if the SED had been filed, the parties then would have been required under law to list their property and its value on the bill of lading, thus overriding the standard COGSA limitations.  This, however, is a permutation of the argument that plaintiffs were not given sufficient notice about COGSA limitations and a reasonable opportunity to declare excess value.  For the reasons stated above, it is not clear that plaintiffs were in fact given an opportunity to declare additional value.  However, this argument stands or falls on the fair opportunity analysis, not on anything to do with the failure to file an SED.

[15] Clauses extending the COGSA limitations in the form of contracts are generally known as Himalaya clauses.  The name "apparently comes from an English ship, *The Himalaya,* whose crew a passenger successfully sued because the carriage contract did not have such a limitation clause."  <u>SPM Corp. v. M/V Ming Moon</u>, 965 F.2d 1297, 1305 (3d Cir. 1992) (internal citations omitted).

18

supporting evidence, that the stevedore had the wrong equipment.  Plaintiffs admit that

defendants "have refused to provide details of the accident."  (P. Opp. 4.)  Instead of seeking to

compel discovery, which they had the opportunity to do, plaintiffs assert that it is "obvious the

stevedore's action caused the loss."  (Id.)  However, it is not obvious to the Court that the failure

to successfully discharge a sea container is gross negligence under any set of circumstances.  Nor

do plaintiffs cite any authority for the proposition that the loss of cargo in unloading a ship is

negligent under the doctrine of *res ipsa loquitur*.

The "mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient" to withstand a motion for summary judgment.  Anderson, 477 U.S. at 252.  Here,

plaintiffs do not provide even a scintilla of evidence to support their claims of negligence, only

blanket assertions that cannot withstand a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, and based solely on the possibility that plaintiffs may not have

been given a reasonable opportunity to declare excess value on the bill of lading for the purposes

of COGSA, the defendants' motion for partial summary judgment (doc. #9) is denied.

SO ORDERED.

Dated: New York, New York
       September 24, 2007

                                        GERARD E. LYNCH
                                        United States District Judge

19